Peretz Bronstein (PB8628)
Edward N. Gewirtz (EG6801)
BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
60 East 42nd Street, Suite 4600
New York, NY 10165
212.697-6484

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

RONALD STOLL,

        Plaintiff

   - against -

JPMORGAN CHASE BANK, N.A. D/B/A
CHASE BANK, JPMORGAN CHASE & CO.,
& EARLY WARNING SERVICES, LLC D/B/A
ZELLPAY.COM

        Defendants.

------------------------------------------------------------------X

COMPLAINT - CLASS ACTION WITH JURY DEMAND

Plaintiff Ronald Stoll ("Stoll"), by his attorneys Bronstein, Gewirtz & Grossman, LLC, for his Complaint on behalf of himself and all others similarly situated against JPMorgan Chase Bank, N.A. d/b/a Chase Bank, JPMorgan Chase & Co. (collectively "Chase") and Early Warning Services, LLC d/b/a Zellepay.com ("Zelle"), alleges with personal knowledge as to his own acts and upon information belief as to all other matters, as follows:

NATURE OF THE ACTION

1. This action is brought by Plaintiff, individually and on behalf of a class of similarly situated customers of Defendants arising from a service malfunction that occurred on or about June 1, 2023, on Defendants' peer-to-peer payment network, Zelle Network® at Chase (the "Service Malfunction").

2. As a result of Defendants' negligence and other violations of law, Plaintiff and Class members were (1) subjected to double debits of payments from their accounts and thereby deprived from accessing funds that were rightfully theirs as the funds had been debited from their accounts twice and weren't reversed until the next day and (2) were unable to obtain information from Chase as to the true status of their account balances due to extended wait times in attempting to contacting customer service, all resulting in financial hardship, bounced checks, charges, general confusion and emotional and mental distress.

3. Plaintiff and Class Members seek damages based upon Defendant's unlawful, negligent conduct described herein.

## JURISDICTION AND VENUE

4. This Court has subject matter over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). Upon information and belief the aggregate claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative class members defined below; and there are numerous members of the proposed class who are citizens of a state different from Defendant.

5. This Court has personal jurisdiction over Defendants. Chase and Zelle operate widely throughout the State and District. This Court has personal jurisdiction over Defendants because Defendants conduct substantial business in this State and District and because a substantial part of the acts and omissions complained of occurred in this State and District.

6. Venue as to Defendants is proper in this District under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District. Defendant is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District.

## PARTIES

7. Chase is a national bank providing, inter alia, retail banking products and services to consumers, including personal deposit accounts. Chase operates banking centers in all 48 states of the contiguous United States, including many in this District.

8. Chase offers a large range of banking, investing, asset management and other financial and risk management products and services. The company serves millions of consumer and small business clients with many retail financial centers, ATMs and digital banking services for millions verified digital users.

9. Early Warning Services, LLC, is a fintech company owned by seven of the country's largest banks: Bank of America, Truist, Capital One, JPMorgan Chase, PNC Bank, U.S. Bank, and Wells Fargo.

10. Early Warning is best known as the owner and operator of the Zelle Network®, a financial services network which purportedly enables individuals to electronically transfer money from their bank account to another registered user's bank account (within the United States) using a mobile device or the website of a participating banking institution.

11. Created in 2017, Zelle is a peer-to-peer payment network that allows users to digitally send money from their account to users at the same or different bank(s).

12. Upon information and belief, eighty percent of the US population has Zelle connected through their banking app, and many others access Zelle through its standalone app. For this reason, many customers use Zelle for transactions like rent payments.

13. Upon information and belief, Defendant was aware that its customers depended upon the proper functioning of Zelle and regularly used Zelle for fundamental transactions, such as rent payments.

14. Upon information and belief, nearly 1,700 banks and credit unions offer Zelle in their mobile apps.

15. Zelle is now the country's most widely used money transfer service.

16. Zelle advertises and represents that "Zelle® is a fast, safe and easy way to send and receive money with friends, family and others you trust."

17. Plaintiff's Zelle account agreement with Chase provides in relevant part at ¶13:

> **13. Sending Money**
>
> You may send money to a recipient at your initiation or in response to that recipient's request for money. You understand that use of this Service by you shall at all times be subject to (i) this Agreement, and (ii) <u>your express authorization at the time of the transaction</u> for us to initiate a debit entry to your bank account. (Emphasis added)

18. For people living paycheck to paycheck (like most Americans), the immediate availability of and access to their funds is essential to meeting their financial needs.

19. Plaintiff Stoll, like the other similar situated members of the proposed class, maintains a bank account at Chase and makes uses of Zelle's services provided in conjunction with Chase to send and receive money to/from others.

20. On June 1, Stoll sent his $2,000 monthly rent payment from his account at Chase via Zelle to his landlord's bank account at an outside bank.

21. To Stoll's great surprise, his online banking records reflected that his $2,000 rent payment was deducted twice from his account at Chase, though Stoll's landlord who uses an outside bank only received one $2,000 rent payment.

22. Stoll did not have sufficient funds in his account to cover two $2,000 withdrawals, and thus the second $2,000 debit caused an overdraft in Stoll's account, causing approximately $1,600 to be transferred to his account from his overdraft protection line, and leaving him unable to access the balance of funds that should have still been in his account for that day and the full amount of his overdraft line.

23. When the mistake was fixed more than 36 hours later, Stoll on his own had to repay money to his overdraft protection, as the $2,000 refund came to his bank account, but did not undo the overdraft protection transfer where most of the money had come from to cover the second $2,000 debit.

24. On June 1, 2023 Stoll also received two $20 credits for one $20 payment from another Chase customer. The other Chase customer had only sent one $20 payment to Stoll. The second $20 credit was removed from Stoll's account on June 2, 2023.

## THE SERVICE MALFUNCTION

25. Without warning, on the morning of June 1, 2023, Chase customers, like Stoll, began noticing that payments, including without limitation payments they had authorized to be made via Zelle had been debited from their accounts twice.

26. Chase customers further noticed that funds that had been sent to them via Zelle by other Chase customers had credited to their accounts twice, causing them to mistakenly believe they had additional funds available in their account.

27. Upon information and belief, payments from Chase accounts to persons at other financial institutions were deducted twice from their Chase accounts, but only credited once to the recipients' accounts at other institutions; while payments to others who banked at Chase were debited twice from the senders' accounts and credited twice to the recipients' accounts at Chase.

28. Upon information and belief, on or about June 2, 2023 the duplicate debits from Chase accounts and duplicate credits to Chase accounts were reversed.

29. Upon information and belief, as a result of the Service Malfunction, numerous Chase customers began complaining of missing funds and unexpected negative balances.

30. Many took to social media to air their grievances.

31. One user posted on Twitter: "Went to buy my @CampFlogGnaw tickets and my card declined. Turns out chase bank doubled charged my rent payment. What a way to start the day :)"

32. To make matters worse, this Service Malfunction occurred on the first day of the month, a date when a higher volume of payments, and larger payments such as monthly rent payments, are typically made.

33. Upon information and belief, Defendant Chase failed to properly connect to and utilize the Zelle platform as the Service Malfunction only affected Zelle customers who banked with Chase.

34. Upon information and belief, Defendants failed to implement protocols for the prompt detection of bugs, and coding and networking errors, including the one that caused the Service Malfunction.

35. Upon information and belief, Defendants failed to implement protocols for the prompt detection of technical issues such as the one that caused the Service Malfunction.

36. Upon information and belief, Defendants failed to promptly notify affected customers of the Service Malfunction.

37. As a direct and proximate result of the actions described above, Plaintiff and Members of the Proposed Class have been damaged.

38. Upon information and belief, during Defendant's Service Malfunction, consumers did not have access to all of their funds, causing hardship, including the inability to pay for basic necessities such as food, rent, electricity, gas and medicine.

39. Upon information and belief, some consumers were unable to pay their household bills, resulting in the assessment of late fees.

40. Upon information and belief, even after funds were returned, the negative effects of Defendant's Service Malfunction remained: consumers (the large majority of whom live paycheck-to-paycheck) were left with damages including overdraft fees, late fees, and extreme anxiety and stress as to whether they would be able to meet their financial obligations.

41. While the Chase and Zelle account agreements have an arbitration clause, the arbitration provision was not brought to Stoll's (nor upon information and belief the proposed class plaintiffs') attention by Chase or Zelle. Stoll, and upon information and belief almost all of the proposed class Plaintiffs, were not aware that the account agreement provided for arbitration and that in using Zelle stated they were forfeiting their rights to pursue claims in a court of law.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this suit as a class action individually and on behalf of all others similarly situated pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a Nationwide and state Sub classes defined as follows: All Chase customers residing in the contiguous United States whose accounts were affected by the Service Malfunction occurring on June 1, 2023.

43. Additionally, Plaintiff is a member of and seeks to represent a New York Subclass, pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3), and/or (b)(4), defined as: All Chase customers in New York whose accounts were affected by the Service Malfunction occurring on June 1, 2023.

44. Excluded from the Class and Subclass are the officers, directors, and legal representatives of Defendants, and the judges and court personnel in this case and any Members of their immediate families.

45. **Numerosity**. Fed. R. Civ. P. 23(a)(1). The Class Members are so numerous that joinder of all Members is impractical. While the exact number of Class Members is unknown to Plaintiff at this time, upon information and belief, Plaintiff expects the Class size to consist of millions of members.

46. **Commonality**. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation: a. whether Defendant owed duties to Plaintiff and the proposed class, the scope of those duties and if they breached those duties;
b. whether Defendant's conduct was unfair or unlawful;

  c. whether Defendant breached its contracts with Plaintiff and the proposed class;

  d. whether Plaintiff and the Class have sustained damages as a result of Defendant's conduct alleged herein and, if so, what is the proper measure of such damages; and

  e. whether Plaintiff and the Class are entitled to declaratory and injunctive relief.

47. **Typicality**. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of those of other Class Members because Plaintiff's account was affected by the Service Malfunction like every other Class Member. Plaintiff's claims are typical of those of the other Class Members because, inter alia, all Members of the Class were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and those of Class Members arise from the same operative facts and are based on the same legal theories.

48. **Adequacy of Representation**. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages he has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

49. **Superiority of Class Action**. Fed. R. Civ. P. 23(b)(3). Class litigation is an appropriate method for the fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and

efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

50. The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

51. The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities

of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

52. **Adequate notice** can be given to Class Members directly using information maintained in Defendants' records.

53. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## FIRST CLAIM – NEGLIGENCE

54. Plaintiff repeats, realleges, and incorporates by reference the allegations of paragraphs 1 through 53 as though fully set forth herein.

55. Defendants owed duties to Plaintiff and the proposed Class, as account holders, to use reasonable care to protect and secure customer funds and provide access to and accurate information as to those monies and accounts.

56. Defendants had full knowledge of the types of harm that Plaintiff and Class Members could and would suffer as a result of an event like the Service Malfunction.

57. Defendants had full knowledge of the types of harm that Plaintiff and Class Members could and would suffer if funds were double debited from customers' accounts.

58. Defendants had full knowledge of the types of harm that Plaintiff and Class Members could and would suffer if they were denied access to portions of the monies in their accounts.

59. Defendants breached their duties to Plaintiff and Class Members by failing to prevent the Service Malfunction.

60. Defendants breached their duties to Plaintiff and Class Members by failing to maintain the integrity of customer accounts during the Service Malfunction resulting in various charges, inaccurate balance statements, and stress and anxiety for Plaintiff and Class Members.

61. Defendants failed to use reasonable care in communicating information about the Service Malfunction and the security and integrity of account funds.

62. Plaintiff and the proposed Class justifiably relied upon the information supplied and representations made by Defendant, and, as a result, engaged in business with Defendants and suffered damages and lost money.

63. But for Defendant's negligence and the Service Malfunction, Plaintiff and the proposed Class would not have suffered the damages alleged herein.

64. As a direct and proximate result of Defendant's negligence, Plaintiff and the proposed Class were damaged in an amount to be proven at trial.

## SECOND CLAIM – BREACH OF CONTRACT

65. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 64 as though fully set forth herein.

66. Plaintiff, and each member of the proposed Class, formed a contract with Defendant at the time they open accounts and deposited monies into and transferred funds through Defendant's services. The terms of that contract include the promises and affirmations of fact made by Defendant through their marketing materials and statements which constitute express warranties, became part of the basis of the

bargain, and are part of a standardized contract between Plaintiff and the members of the proposed Class on the one hand, and Defendant on the other.

67. Defendants' Online Banking Agreement with Plaintiff and Class Members also made numerous promises and covenants to Plaintiff and Class Members, which it broke including the promise that it would obtain: "your express authorization at the time of the transaction for us to initiate a debit entry to your bank account." Clearly authorization for one debit was not authorization for two debits, not even temporarily.

68. In exchange for Defendant's assurance to Plaintiff and Class Members that they would have access to their financial accounts and funds which would be maintained securely and accurately, Plaintiff and Class Members funded their accounts and utilized banking services which generated revenue for Defendant.

69. Plaintiff and Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed.

70. Defendant breached the terms of its contract, including the express warranties, with Plaintiff and the proposed Class by not providing a product and service which provided the promised benefits as described above.

71. As a result of Defendant's breach of its contract and warranties, Plaintiff and the proposed Class have been damaged in an amount to be proven at trial.

## THIRD CLAIM – VIOLATION OF NY GBL 349

72. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 71 as though fully set forth herein.

73. Defendants represented that customers' payments through Zelle were safe and secure, and that no debits would be made without the customers' authorization.

74. Upon information and belief Defendants knew their payments system(s) were not completely safe and secure, but were prone to service malfunctions.

75. New York General Business Law §349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state..."

76. Defendants violated NY GBL 349 by misrepresenting the safety and security of their Zelle payment service from Chase customer accounts.

77. As a result Plaintiff and the proposed Class are entitled to damages at an amount to be determined at trial plus their reasonable attorneys' fees.

FOURTH CLAIM – UNJUST ENRICHMENT (IN THE ALTERNATIVE)

78. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 77 as though fully set forth herein.

79. During the time period of the Service Malfunction, Defendants retained funds of Plaintiff and the proposed Class that Defendants were not entitled to.

80. Money has a time value.

81. Defendants were unjustly enriched by having at no interest the money belonging to Plaintiff and the proposed Class for a period believed to be in excess of 36 hours.

82. Defendants did not pay interest to Plaintiff and the proposed Class for the 36 hours that Defendants wrongfully retained Plaintiff and the proposed Class' funds.

83. Defendants were unjustly enriched at Plaintiff and the proposed Class' expense, and the amount of that unjust enrichment should be disgorged and paid to Plaintiff and the Class in an amount to be determined at trial.

### FIFTH CLAIM – BREACH OF FIDUCIARY DUTY

84. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in paragraphs 1 through 83 as though fully set forth herein.

85. Defendant owed a fiduciary duty to Plaintiff and Class members to properly protect, secure, transfer, and retain all monies that lawfully belonging to them.

86. As alleged herein, Defendant breached its fiduciary duties by failing to prevent the Service Malfunction.

87. Defendant breached its fiduciary duties by denying Plaintiff and Class members access to the funds that lawfully belonged to them.

88. Defendant breached its fiduciary duties by failing to properly protect, secure, and retain all monies that lawfully belonged to Plaintiff and Class members.

89. As a result of the foregoing actions of Defendant, Plaintiff and the proposed Class have been damaged in an amount to be proven at trial.

PRAYER FOR RELIEF WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

a. For an Order certifying the Class as defined herein, and appointing Plaintiff and their Counsel to represent the Class;

    b. For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

    c. For punitive and treble damages if permitted by law;

    d. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

    e. For prejudgment interest on all amounts awarded; and

    f. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demand trial by jury of all claims so triable.

Dated:  June 5, 2023

                                          BRONSTEIN, GEWIRTZ
                                            & GROSSMAN, LLC
                                          By:

                                          __/s/ Peretz Bronstein_____
                                          Peretz Bronstein (PB8628)
                                          Edward Gewirtz (EG6801)
                                          60 East 42nd Street, Suite 4600
                                          New York, New York 10165
                                          (212) 697-6484
                                          Attorneys for Plaintiff
                                          Peretz@bgandg.com
                                          Chona@bgandg.com